# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | § Chapter 11 |
| VANGUARD NATURAL RESOURCES, LLC, *et al.*, | § Case No. 17-30560 |
| Reorganized Debtors, | § (Jointly Administered) |
| VANGUARD OPERATING, LLC, | |
| Plaintiff, | § Adversary No. 18-3046 |
| v. | |
| STATE OF WYOMING, DEPARTMENT OF REVENUE, Mineral Tax Division, | |
| Defendant. | |

## STATE OF WYOMING DEPARTMENT OF REVENUE'S BRIEF IN SUPPORT OF ITS REQUEST FOR ABSTENTION

## TABLE OF CONTENTS

TABLE OF CASES, AUTHORITIES AND RULES .................................................................. ii

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

    A.    The tax issues in this matter concern one of the most complex deductions in Wyoming severance tax law and are exceedingly fact intensive. ........................... 3

    B.    Abstention would not impair the orderly and efficient administration of the bankruptcy case because the bankruptcy plan has been confirmed. ....................... 5

    C.    Abstention would lighten the load on this already busy Court. .............................. 6

    D.    Abstention could potentially shorten the length of time required for trial and decision of this issue. ................................................................................................ 6

    E.    The asset and liability structure of Vanguard neither favors nor disfavors abstention. ................................................................................................................ 7

    F.    The potential prejudice to Vanguard stemming from abstention is vastly outweighed by the potential prejudice to the Department's obligation to fairly and uniformly assess competing oil and gas firms. ............................................... 7

CONCLUSION .............................................................................................................................. 9

CERTIFICATE OF SERVICE ...................................................................................................... 9

EXHIBIT A – Affidavit of Craig Grenvik

EXHIBIT B – Wyoming Statute § 39-14-203

EXHIBIT C – Wyoming Statute § 39-14-209

EXHIBIT D – Rules Wyoming Board of Equalization, ch. 2

EXHIBIT E – Wyoming Constitution, art. 15, §§ 3 & 11

# TABLE OF CASES, AUTHORITIES AND RULES

**Cases**

*ANC Rental Corp. v. Dallas Cty (In re ANC Rental Corp.)*,
    316 B.R. 153 (Bankr. Del. 2004) ............................................................................. 3, 5, 7

*In re Beisel*,
    195 B.R. 378 (Bankr. S.D. Ohio, 1996) ............................................................................. 3

*BHP Petroleum Co. v. State*,
    784 P.2d 621 (Wyo. 1989) ............................................................................. 1

*Dees v. United States (In re Dees)*,
    369 B.R. 677 (Bankr. N.D. Fla. 2007) ............................................................................. 2, 3

*Exxon Mobil Corp. v. Dep't of Revenue*,
    2009 WY 139, 219 P.3d 128 (Wyo. 2009) ............................................................................. 4

*In re Indianapolis Downs, LLC*,
    462 B.R. 104 (Bankr. Del. 2011) ............................................................................. 5

*Metromedia Fiber Network, Inc. v. Various State & Local Taxing Auth. (In re Metromedia Fiber Network Inc.)*,
    299 B.R. 251 (Bankr. S.D. N.Y. 2003) ............................................................................. 7, 8

*In re Miller*,
    300 B.R. 422 (Bankr. N.D. Ohio 2003) ............................................................................. 2, 3, 6, 7

*Montgomery Ward Holding Corp. v. Pappas (In re Montgomery Ward Holding Corp.)*,
    2000 Bankr. LEXIS 1326, *26, 2000 WL 33712307 (Bankr. D. Del. Sep. 1, 2000) ................. 6

*Sarfani, Inc. v. Miss. Dep't of Revenue (In re Sarfani, Inc.)*,
    527 B.R. 241 (Bankr. N.D. Miss. 2015) ............................................................................. 3

*Union Pac. Res. Co. v. State*,
    839 P.2d 356 (Wyo. 1992) ............................................................................. 1, 4

**Statutes**

11 U.S.C. § 505 ............................................................................. 2

Wyo. Stat. Ann. § 39-14-203 ............................................................................. 4

Wyo. Stat. Ann. § 39-14-209 ............................................................................. 7

**Other Authorities**

Wyo. Const. art. 15, § 3 ...............................................................................................................1

Wyo. Const. art. 15, § 11 .............................................................................................................8

**Rules**

*Rules Wyo. Bd. of Equalization,* ch. 2, § 5....................................................................................7

*Rules Wyo. Bd. of Equalization,* ch. 2, § 15..................................................................................7

The State of Wyoming Department of Revenue (Department) requests that this Court abstain from declaring the tax liability of Vanguard Operating, LLC (Vanguard) for 2014.

## BACKGROUND

1. On March 3, 2018, Vanguard initiated an Adversary Proceeding against the Department, seeking among other things a reduction and refund of its Wyoming 2014 mineral severance tax liability. [Compl., ¶¶ 31-39]. A few months later, Vanguard added an additional cause of action seeking a declaration that the Department must accept its amended 2014 tax returns so that it may reduce its ad valorem tax liability.[1] [Am. Compl., ¶¶ 49-53].

2. In 2014, Vanguard owned and operated approximately 1,550 natural gas and oil wells in Wyoming and consequently filed over 14,000 severance tax returns. [Aff. of Craig Grenvik, ¶ 3](Grenvik Aff.) attached hereto as Exhibit A. Vanguard alleges that three years later it undertook a thorough review of its prior severance tax reporting. [Am. Compl., ¶ 20]. As a result of this analysis, Vanguard asserts that it failed to request various deductions for transportation of minerals. [Am. Compl., ¶ 17]. The following year in 2018, Vanguard submitted thousands of amended gross products and severance tax returns, recalculating the severance tax for each of its wells operated during 2014. [Am. Compl., ¶ 23].

---

[1] Mineral taxation in Wyoming takes two forms: ad valorem and severance taxation. *Union Pac. Res. Co. v. State*, 839 P.2d 356, 361 (Wyo. 1992). The ad valorem property tax is a constitutionally-mandated local tax "collected by the county and measured in the mineral value at production." *Id.*; Wyo. Const. art. 15, § 3 attached as Exhibit E. In contrast, the severance tax, the tax at issue in this case, is "an excise tax upon the current and continuing privilege of extracting minerals." *BHP Petroleum Co. v. State*, 784 P.2d 621, 626 (Wyo. 1989).

1

3.        Vanguard, however, provided no supporting documentation to enable the Department to verify the validity of the requested amendments, causing the Department to reject many of these amended returns.[2] [Grenvik Aff., ¶ 9]. Since that time, Vanguard has resubmitted several of the rejected amended returns for Departmental review. [Grenvik Aff., ¶ 10]. The Department is currently evaluating these newly submitted amendments. [Grenvik Aff., ¶ 10].

## ARGUMENT

4.        The Department requests that this Court abstain from the determination of Vanguard's three-year old severance liability and instead require Vanguard to pursue its requested refund under the same Wyoming administrative tax process applicable to its competitors.

5.        Under 11 U.S.C. § 505(a) of the Bankruptcy Code, bankruptcy courts may, but are not required to, determine the amount or legality of any tax whether or not assessed, paid or previously contested. Congress explained the grant of jurisdiction on two grounds. First, it wanted to prevent the dissipation of estate assets where a debtor, due to its ailing financial condition, did not vigorously pursue its tax claims. *In re Miller*, 300 B.R. 422, 432 (Bankr. N.D. Ohio 2003). Second, a forum for the timely determination of the legality or amount of tax claims would prevent disruption to the orderly and efficient administration of the bankruptcy estate. *Id.*

6.        Congress, however, did not designate the bankruptcy court as the exclusive forum for determining a debtor's tax liability. Congress used the term "may" instead of "shall" in recognition of a bankruptcy court's authority to abstain from tax liability determinations where the policy reasons for the exercise of its jurisdiction do not exist. *Dees v. United States (In re Dees)*,

---

[2] In addition, the Department rejected the amended returns due to math errors and formatting incompatible with Departmental computer systems. [Grenvik Aff., ¶ 9].

369 B.R. 677 (Bankr. N.D. Fla. 2007); *Sarfani, Inc. v. Miss. Dep't of Revenue (In re Sarfani, Inc.)*, 527 B.R. 241, 251 (Bankr. N.D. Miss. 2015). When considering whether to abstain, courts employ the following six factor test:

(1) the complexity of the tax issues to be decided;
(2) the need to administer the bankruptcy case in an orderly and efficient manner;
(3) the burden on the bankruptcy court's docket;
(4) the length of time required for the trial and the decision;
(5) the asset and liability structure of the debtor; and
(6) the prejudice to the debtor and the potential prejudice to the taxing authority.

*Sarfani, Inc.*, 527 B.R. at 252.

7. The Court should abstain from determining Vanguard's tax liability because the majority of these factors weigh in favor of the resolution of this dispute under the Wyoming administrative tax process.

### A. The tax issues in this matter concern one of the most complex deductions in Wyoming severance tax law and are exceedingly fact intensive.

8. Where a tax determination involves a complex tax issue or intensive factual analysis, courts often abstain. *ANC Rental Corp. v. Dallas Cty (In re ANC Rental Corp.)*, 316 B.R. 153, 159 (Bankr. Del. 2004); *In re Beisel*, 195 B.R. 378, 380 (Bankr. S.D. Ohio, 1996); *In re Miller*, 300 B.R. at 432. They do so because it is generally more efficient for a specialized body, with personnel already well-versed in the intricacies of the applicable tax law, to resolve a complex or fact intensive tax dispute. *In re Miller*, 300 B.R. at 432. While bankruptcy courts are more than capable of making this determination, they recognize that it is inefficient for them to perform the type of initial research often unnecessary for a tax court. *Id.* In other words, it often conserves judicial resources for tax questions to be decided by the entity whose principal job it is to do so. *Id.*; *Dees*, 369 B.R. at 679.

3

9. Recognizing the often fact-intensive and complex nature of tax disputes, the Wyoming Legislature has assigned to the State Board of Equalization, an independent quasi-judicial entity, the obligation in the first instance to "[d]ecide all questions that may arise with reference to the construction of any statute affecting the assessment, levy and collection of taxes…." *Union Pac. Res. Co.*, 839 P.2d at 363. In particular, for the past twenty-plus years, the Board has tackled the complex questions arising from Wyoming's unique system of mineral taxation.

10. According to Vanguard's amended complaint, the primary dispute in question appears to concern whether it is entitled to transportation deductions for minerals from many of the over 1,550 natural gas and oil wells operating in 2014. [Am. Compl., ¶ 17]. The availability of the transportation deduction concerns some of the most complicated and litigated aspects of Wyoming severance taxation. Under Wyoming Statute § 39-14-203, Wyoming levies a severance tax on the value of oil and natural gas at the time "the production process is completed." Wyo. Stat. Ann. § 39-14-203(b)(ii), attached hereto as Exhibit B. As the Wyoming Supreme Court has acknowledged, "[i]t is not always clear, however, just where the production process is completed and other operations, such as **transportation**, are begun." *Exxon Mobil Corp. v. Dep't of Revenue*, 2009 WY 139, ¶ 12, 219 P.3d 128, 134 (Wyo. 2009) (emphasis added). In an attempt to clarify this issue, the Wyoming Legislature specified four potential locations at which the production process of oil and gas is complete: the outlet of the initial dehydrator or, if no dehydration is performed, the inlet to the initial transportation related compressor, custody transfer meter or processing facility, whichever occurs first. *Id.* Given the multiple potential points of valuation, the determination of any transportation deduction requires a fact-intensive examination of the configuration and processing of oil and natural gas from Vanguard's wells. As part of this process,

4

the Department, and eventually the trier of fact, must have access to among other things, sales contracts, processing agreements, and field schematics, all documents Vanguard has yet to provide. [Grenvik Aff., ¶ 8].

11. Nor does there appear to be any dispute concerning the complex and fact intensive nature of this determination. In its amended complaint, Vanguard asserts that it undertook "considerable effort to analyze its prior severance tax reporting" and filed "**thousands of amendments**" to its 2014 severance tax returns. [Am. Compl., ¶¶ 20, 23]. (emphasis in original).

12. Accordingly, based on the complex and fact-intensive nature of the tax dispute at issue, this factor weighs in favor of abstention.

### B. Abstention would not impair the orderly and efficient administration of the bankruptcy case because the bankruptcy plan has been confirmed.

13. When determining whether to abstain, bankruptcy courts consider the effect of abstention on the administration of the bankruptcy estate. *In re Indianapolis Downs, LLC*, 462 B.R. 104, 115 (Bankr. Del. 2011). In particular, bankruptcy courts acknowledge that swift determination of tax liability in some circumstances could materially aid the debtor in structuring its plan of reorganization, which in turn could impact the entire creditor body. *Id.* In contrast, where a plan is already in place and little remains other than the determination of tax liability, courts often abstain. *Compare In re Indianapolis Downs, LLC,* 462 B.R. at 115, *with ANC Rental Corp.,* 316 B.R. at 159. In the instant action, a plan has already been confirmed[3] and, therefore, abstention would not affect the orderly and efficient administration of the bankruptcy. Accordingly, this factor weighs in favor of abstention.

---

[3] Order Confirming Second Amended Joint Plan of Reorganization, Document No. 1109.

5

### C. Abstention would lighten the load on this already busy Court.

14. Because bankruptcy courts have the discretion, but are not required, to determine debtor tax liability, these courts often consider the effect of an additional trial and decision on its caseload. *In re Miller*, 300 B.R. at 432-33. While this Court would be in a better position to ascertain the precise effect of abstention on its caseload, the Department will note that as of June 2018 almost 18,000 cases remain pending in this district, suggesting that abstention could lighten this Court's already heavy caseload.[4] Accordingly, this factor weighs in favor of abstention.

### D. Abstention could potentially shorten the length of time required for trial and decision of this issue.

15. To ensure that the determination of a debtor's tax liability is not unduly delayed, courts assess the effect of abstention on the timely resolution of the dispute. *In re Miller*, 300 B.R. at 431. Where a debtor has been dilatory in seeking an adjudication of its tax liability, however, courts will give this factor less weight. *Montgomery Ward Holding Corp. v. Pappas (In re Montgomery Ward Holding Corp.)*, 2000 Bankr. LEXIS 1326, *26, 2000 WL 33712307 (Bankr. D. Del. Sep. 1, 2000). In this case, the debtor waited almost three years to re-examine its old tax returns for additional deductions and since that time has failed to provide the requested backup documentation on several occasions. [Am. Compl., ¶¶ 19-20; Grenvik Aff., ¶¶ 9-10]. Vanguard's conduct suggests that time is not of the essence and therefore this factor should be given less weight in the analysis.

---

[4] U.S. Bankruptcy Courts – Bankruptcy Cases Commenced, Terminated and Pending During the 12-Month Periods Ending June 30, 2017 and 2018, http://www.uscourts.gov/statistics/table/f/bankruptcy-filings/2018/06/30 (last visited August 20, 2018)

16. In any event, abstention would not significantly delay the determination of Vanguard's tax liability. As previously discussed above, the Department is in the process of reviewing Vanguard's latest amendments to its 2014 tax returns. [Grenvik Aff., ¶ 10]. Once the Department completes its review and issues a final decision, Vanguard may appeal to the State Board of Equalization. Wyo. Stat. Ann. § 39-14-209(b)(i), attached hereto as Exhibit C; *Rules Wyo. Bd. of Equalization, Practice and Procedure for Cases Before the Wyoming State Board of Equalization,* ch. 2, § 5 (e) attached hereto as Exhibit D.

17. While the Board generally sets a hearing date quickly, Vanguard may request an expedited review if it is concerned about the timeliness of the review. *Rules Wyo. Bd. of Equalization, Practice and Procedure for Cases Before the Wyoming State Board of Equalization,* ch. 2, § 15. Accordingly, given the dilatory conduct of Vanguard and the availability of another forum capable of prompt action, this factor supports abstention.

    **E.**    **The asset and liability structure of Vanguard neither favors nor disfavors abstention.**

18. The asset and liability structure of an entity may support abstention if it is unduly complicated, causing more time intensive review. *ANC Rental Corp.*, 316 B.R. at 159. Based on the allegations in the complaint, it is unclear whether Vanguard's structure is particularly complicated. Accordingly, this factor is neutral.

    **F.**    **The potential prejudice to Vanguard stemming from abstention is vastly outweighed by the potential prejudice to the Department's obligation to fairly and uniformly assess competing oil and gas firms.**

19. The final factor balances the potential prejudice to the parties caused by either abstention or retention of jurisdiction. *In re Miller*, 300 B.R. at 433. Courts focus on the importance of the uniformity of assessment to local governments due to the potential of the market altering effects of taxation. *Metromedia Fiber Network, Inc. v. Various State & Local Taxing Auth. (In re*

7

*Metromedia Fiber Network Inc.)*, 299 B.R. 251, 282 (Bankr. S.D. N.Y. 2003). While some form or definition of market value is the touchstone of assessment, fair allocation among the tax base often depends more on the application to all affected taxpayers of uniform standards for assessing value than on an economist's ideal calculation of fair market value. *Id.*

20. The uniformity of severance and ad valorem taxation is of paramount importance to the Department. Preliminarily, Vanguard operates in a market containing between 300 and 400 similar producers. [Grenvik Aff., ¶ 4]. Any difference in taxation treatment could adversely affect this market. Moreover, the Constitution of the State of Wyoming creates a duty to uniformly administer mineral taxation. Wyo. Const. art. 15, § 11 attached as Exhibit E. And as Vanguard acknowledges in its amended complaint, the Department plays a role in this analysis by reconciling the taxable value of mineral production for both ad valorem and severance taxation. [Am. Compl., ¶ 52]. Accordingly, the importance of uniformity weighs heavily in favor of abstention.

21. In contrast, the potential prejudice to Vanguard from abstention is minimal. Time does not appear of the essence given Vanguard's three-year delay in seeking a redetermination of its previous tax liability and its reorganization plan has already been confirmed. [Am. Compl., ¶ 20]. Moreover, should this Court abstain, Vanguard would merely be treated like its 300-plus competitors in Wyoming, with access to the same administrative and legal remedies. [Grenvik Aff., ¶ 4]. In sum, given the potential prejudice to the Department caused by the exercise of this Court's jurisdiction and the non-existent prejudice to Vanguard in abstaining, this factor weighs heavily in favor of abstention.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that this Court abstain from re-determining Vanguard's 2014 Wyoming severance tax liability and all associated requests for relief.

DATED this 27th day of August 2018.

/s/ Daniel Solish
Karl D. Anderson, Wyo. Bar No. 6-2807
Megan Pope, Wyo. Bar No. 6-4483
Daniel Solish, Wyo. Bar No. 7-5815
Senior Assistant Attorneys General
Wyoming Attorney General's Office
Kendrick Building
2320 Capitol Avenue
Cheyenne, Wyoming 82002
(307) 777-7886
(307) 777-3687 fax
karl.anderson@wyo.gov
megan.pope@wyo.gov
daniel.solish@wyo.gov

*ATTORNEYS FOR DEFENDANT THE WYOMING DEPARTMENT OF REVENUE*

## CERTIFICATE OF SERVICE

I certify that on this 27th day of August 2018, a copy of the foregoing **STATE OF WYOMING, DEPARTMENT OF REVENUE'S BRIEF IN SUPPORT OF ITS REQUEST FOR ABSTENTION** has been served on all parties of record via the Court's ECF system.

/s/Daniel Solish
Office of the Attorney General