

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
05/14/2019

| | | |
|---|---|---|
| **IN RE:** | § | |
| **VANGUARD NATURAL RESOURCES,** | § | **CASE NO: 17-30560** |
| **LLC** | § | |
|     **Debtor(s)** | § | |
| | § | **CHAPTER  11** |
| | § | |
| **VANGUARD OPERATING, LLC** | § | |
|     **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 18-03046** |
| | § | |
| **STATE OF WYOMING, DEPARTMENT** | § | |
| **OF REVENUE, MINERAL TAX DIVISION** | § | |
|     **Defendant(s)** | § | |

## MEMORANDUM OPINION

On February 1, 2017, Vanguard Natural Resources, LLC and its subsidiaries, including Vanguard Operating, LLC ("Vanguard"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

On March 13, 2018, Vanguard initiated this adversary proceeding against the State of Wyoming Department of Revenue ("the Department"), in which it requested, among other things, an adjudication of its 2014 amended tax returns previously denied by the Department.

On August 27, 2018, the Department filed a Request for Abstention, arguing that although the Court had the authority to exercise jurisdiction over Vanguard's tax claims, the six-factor test for permissive abstention counseled against exercising jurisdiction.  Vanguard takes the contrary position, maintaining that not only does the Court have the authority to exercise jurisdiction over its tax claims, but further that the six-factor test compels this Court to exercise jurisdiction over the entirety of Vanguard's claims.

For the reasons set forth below, the Court will exercise jurisdiction over Counts I, II and IV in Vanguard's complaint.

## Background[1]

Prior to filing its bankruptcy petition, Vanguard paid monthly severance taxes on oil and natural gas production throughout the state of Wyoming as part of its mineral interest ownership in the state.[2]   (ECF No. 17 at 3–4).   In 2014, Vanguard expanded its operations and mineral interests in Wyoming by acquiring assets in the Powder River Basin, the Wind River Basin, the Green River Basin, and the Big Horn Basin.   (ECF No. 17 at 3).   As a result of those acquisitions, in 2014 Vanguard owned and operated approximately 1,550 natural gas and oil wells in Wyoming and filed over 14,000 mineral tax returns for those same wells.   (ECF No. 25-1 at 2).   That same year, Vanguard paid the Department $12,466,356.93 in severance taxes. (ECF No. 27 at 5).

Vanguard claims that in early 2017, as it prepared its 2016 gross products tax return on production, it "realized it had overpaid its severance tax on certain wells in Wyoming."   (ECF No. 27 at 5).   As a result, in 2018 Vanguard filed more than 2,000 amended tax returns, restating its 2014 severance tax obligation.[3]   (ECF No. 25-1 at 2; ECF No. 17 at 5).   According to Vanguard, the overpayment of taxes stemmed from its 2014 "complex asset acquisitions," which required that Vanguard "adjust its tax accounting methodologies on the newly acquired mineral interests and wells."   (ECF No. 17 at 4).   Specifically, Vanguard claims that it did not take several available tax deductions for some of the newly acquired wells before calculating the

---

[1] The following background section is intended to provide context and does not constitute findings of fact by the Court.

[2] Severance taxes are calculated by taking the sum of all revenue from the sales of oil and natural gas volumes, subtracting any allowable deductions, and multiplying the product by a 6% tax rate.   (ECF No. 17 at 4).

[3] Craig Grenvik, the Department's Mineral Tax Division Administrator indicates that the year is 2017; however, it is likely that this is mistake in light of the parties' extensive briefing.   (*See* ECF No. 17 at 5; ECF No. 25 at 5).

severance tax owed, and that it over-reported sale volume and revenues on other acquired wells. (ECF No. 17 at 4).  Vanguard currently seeks a refund of $710,120.41 based on an alleged overpayment of its 2014 severance taxes.  (ECF No. 17 at 5).

From January to February 2018, Vanguard submitted thousands of amended gross products and severance tax returns to the Department, recalculating the severance tax for each well it operated during the 2014 tax year.[4]  (ECF No. 17 at 5; ECF No. 25 at 5).  While the Department "accepted several amendments" in which Vanguard underreported taxes on some wells, it also "denied thousands of [other] amendments" that would have entitled Vanguard to refunds.[5]  (ECF No. 17 at 5).  Vanguard received the Department's rejection notices on February 13, 2018.  (ECF No. 27 at 5).  Vanguard indicates that, rather than appeal to the Wyoming State Board of Equalization (the "Board"), it opted to file a complaint initiating this adversary proceeding prior to the expiration of the 30-day appeal period.  (ECF No. 27 at 6).

Vanguard resubmitted several of the rejected amended returns for departmental review, all of which are currently being evaluated.  (ECF No. 25 at 6).  Vanguard submitted additional amendments to its 2014 tax returns in April 2018.  (ECF No. 27 at 6).  Approximately a month later, Vanguard "received a letter from [the Department] requesting substantially similar documentation concerning the amended 2014 tax returns that resulted in their rejection back in February 2018."  (ECF No. 27 at 6).

## Procedural History

On February 1, 2017, Vanguard Natural Resources, LLC and its direct and indirect subsidiaries—including Vanguard Operating, LLC—commenced chapter 11 cases by filing

---

[4] Vanguard alleges that it "manually recalculated the production, prices, and deductions for each of the Wyoming wells in which Vanguard owns mineral interests."  (ECF No. 27 at 5).

[5] The Department claims its rejection of various amendments stemmed from Vanguard's lack of supporting documentation, math errors, and incompatible formatting.  (ECF No. 25 at 6).

voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. (Case No. 17-30560, ECF No. 1). On July 17, 2017, Vanguard filed its amended Plan of Reorganization. (Case No. 17-30560, ECF No. 1096). On July 18, 2017, the Plan was confirmed, and it became effective on August 1, 2017. (Case No. 17-30560, ECF No. 1109).

On February 22, 2017, the State of Wyoming filed Proof of Claim No. 73. (*See* ECF No. 17–1). The Department's claim seeks an unsecured priority claim of $1,000.00 for taxes owed pursuant to 11 U.S.C. § 507(a)(8). (ECF No. 17 at 7).

On March 13, 2018, Vanguard filed a complaint initiating this adversary proceeding. (*See* ECF No. 1). Vanguard's amended complaint seeks the following relief:

- Count I: A declaration under 11 U.S.C. § 505 of Vanguard's liability, if any, to the Department for the 2014 tax year;

- Count II: A refund under 11 U.S.C. §§ 505 and 542 for severance tax overpayments made to the Department for the 2014 tax year;

- Count III: Turnover of estate property pursuant to 11 U.S.C. § 542(a);

- Count IV: A declaration instructing the Department to accept Vanguard's amendments for the 2014 tax year;

- Counts V & VI: Avoidance and recovery of preferential transfers made to the Department pursuant to 11 U.S.C. §§ 547 and 550; and

- Counts VII & VIII: Disallowance of the Department's Proof of Claim No. 73 pursuant to 11 U.S.C. § 502(d).

(ECF No. 17 at 1–2).

On August 27, 2018, the Department filed a Request for Abstention. (*See* ECF No. 25). The Department requests that this Court abstain from exercising jurisdiction over Counts I, II, and IV of Vanguard's complaint, and "require Vanguard to pursue its requested refund under the same Wyoming administrative tax process applicable to its competitors"—through the Board. (ECF No. 25 at 6). Specifically, the Department argues that the six-factor test counsels against

exercising jurisdiction in this case because: (i) the tax issues in this matter are complex and exceedingly fact-intensive; (ii) abstention would not impair the orderly and efficient administration of the estate because the Plan has been confirmed; (iii) abstention would lighten this Court's docket; (iv) the length of trial and decision would be shortened if taken up through the Board; (v) Vanguard's asset and liability structure neither favors nor disfavors abstention; and (vi) Vanguard's potential prejudice is outweighed by the potential prejudice to the Department's obligation to fairly and uniformly assess competing oil and gas firms' severance and ad valorem taxes.  (ECF No. 25 at 3–12).

On September 27, 2018, Vanguard filed its Opposition to the Department's Request for Abstention.  (*See* ECF No. 27).  Vanguard argues that abstention would be "inefficient, costly, and illogical" because it would force it to litigate in multiple forums in different states.  (ECF No. 27 at 16).  Vanguard claims the Court should not abstain from adjudicating its § 505 claim because: (i) although the documents are voluminous, the evidence can be simplified and the tax issues are not complex; (ii) given that the claims are interrelated, the Court's determination of the tax issues will aid in the efficient administration of this case; (iii) the case will not burden the Court's docket; (iv) adjudication of these issues will be resolved quickly in this Court; (v) Vanguard's asset and liability structure is irrelevant; and (vi) Vanguard will be significantly prejudiced if the Court abstains.  (ECF No. 27 at 14–19).  Additionally, Vanguard contends that abstention could foreclose it from seeking relief in an alternative forum, since the 30-day period for appealing the Department's rejection of its 2014 amendments has passed.  (ECF No. 27 at 10).

On October 22, 2018, the Court held a hearing on the Department's Motion to Abstain. At the hearing, the Department argued that although the Court has jurisdiction to adjudicate

Vanguard's tax claims, that such jurisdiction is discretionary, and the Court should abstain when the policy reasons for exercising jurisdiction do not exist.  (October 22, 2018 Hearing at 9:35 a.m.).  The Court took this matter under advisement at the conclusion of the hearing.

*Vanguard's Second Bankruptcy Filing*

On March 31, 2019, Vanguard Natural Resources, Inc. ("VNR Finance Corp.") and its direct and indirect subsidiaries—including Vanguard Operating, LLC—commenced a second chapter 11 case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("*Vanguard II*").  (Case No. 19-31786, ECF No. 1).  On April 12, 2019, the Court requested briefing on the effect of VNR Finance Corp.'s Chapter 11 filing on the Department's Motion to Abstain.  (*See* ECF No. 40).  Both parties maintain their previous positions.

Vanguard argues that its "second chapter 11 filing strongly supports the Court declining to abstain from determining whether the Debtors are entitled to a tax refund."  (ECF No. 43 at 2).  Vanguard claims that the confirmed plan in the first bankruptcy ("*Vanguard I*") is no longer operative and therefore, declining to abstain is essential to preserving it as a going concern and maximizing value to creditors.  (ECF No. 43 at 2).  Vanguard further claims that there is a tight deadline for plan confirmation in *Vanguard II*, which can only be accomplished through this Court's retention of the Counts I, II, and IV.  (ECF No. 43 at 3).

The Department argues that Vanguard's second bankruptcy filing has no effect on its Motion to Abstain because: (i) Vanguard has not withdrawn, modified, or transferred its amended complaint in this adversary proceeding; (ii) the status of the amended tax returns has not changed; and (iii) exercising jurisdiction over Vanguard's amended tax returns will not serve the two-fold purpose of § 505.  (*See* ECF No. 44).  Notably, the Department contends that the only factor affected by *Vanguard II* is the burden on this Court's docket.  (ECF No. 44 at 7).

**Jurisdiction**

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

**Analysis**

**I. Exercising Jurisdiction Pursuant to 11 U.S.C. § 505**

Section 505(a)(1) permits, but does not require, the bankruptcy court to determine a debtor's tax liability. It provides that "the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to a tax," whether or not such tax has been previously assessed or paid. 11 U.S.C § 505(a)(1). It is undisputed that this Court has the authority to adjudicate Vanguard's 2014 tax amendments.

However, this authority is restricted under § 505(a)(2). The court may not determine "any right of the estate to a tax refund, before the earlier of: (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed or (ii) a determination by such governmental unit of such request." § 505(a)(2)(B). At a pre-trial conference held on June 27, 2018, the parties agreed that the restriction under § 505(a)(2)(B) would be cured with the passage of time. (ECF No. 28 at 7).

The Court's authority to determine taxes is further restricted with respect to ad valorem taxes under § 505(a)(2)(C), in that it cannot determine "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable non-bankruptcy law has expired." § 505(a)(2)(C). In other words, "if the liability for an ad valorem tax has become fixed and the debtor's time to contest it outside of the bankruptcy court has expired, the

debtor may not contest the liability in bankruptcy." *In re CM Reed Almeda 1-3062, LLC*, No. 13-19117-gs, 2016 WL 3563148, at *4 (Bankr. D. Nev. May 31, 2016).  Section 505(a)(2)(C) is applicable to this dispute, because Vanguard's motion asks this Court to determine the proper amount of ad valorem taxes to be assessed on the property.

Vanguard argues that Wyoming law may preclude it from obtaining relief from the Board if this Court declines to exercise jurisdiction, given that the 30-day period for disputing rejections of applicable tax returns expired shortly after the initiation of this adversary proceeding.  (ECF No. 27 at 10).  Vanguard cites a number of cases for the proposition that "a lack of an alternative forum precludes permissive abstention under both 28 U.S.C. § 1334(c) and 11 U.S.C. § 505(a)."  (ECF No. 27 at 10).  The Department argues that the 30-day appeal period has not yet begin to run because the Department has not yet "issued a final agency action concerning Vanguard's returns."  (ECF No. 31 at 3).  Thus, Vanguard is not time barred under Wyoming Law.  (ECF No. 31 at 2–3).

It is undisputed that Vanguard is entitled to a redetermination of its 2014 tax returns, since it filed its returns within three years "from the date the production should have been reported."  WYO. STAT. ANN. § 39-14-209(c)(i), (ii);[6] (*see also* ECF No. 31 at 3).  The Department itself concedes that Vanguard, pursuant to an extension granted by the Department, filed its amended returns less than three years from its reporting date, making its filing timely. (ECF No. 31 at 3).  Vanguard's future appeal of its filed amended returns, however, is in question.

---

[6] "If a taxpayer has reason to believe that ad valorem [or severance] taxes imposed by this article have been overpaid, a request for refund shall be filed with the department by submitting amended returns within three years [] from the date the production should have been reported pursuant to W.S. 39-14-207(a)(i)."  WYO. STAT. ANN. § 39-14-209(c)(i), (ii).

Any person aggrieved by a Department of Revenue determination may appeal to the Board. *See* Wyo. Stat. Ann. § 39-14-209(b)(i). The appeals must be made "in a timely manner." *Id*. There are no time limitations in section (b) of the statute. *Id*. The 30-day limitation for filing an appeal appears in sections (iv) and (v). Those sections indicate that following a determination of "the fair market value of crude oil, lease condensate or natural gas production," and "mine product valuation amendments," respectively, a taxpayer may file an appeal within 30 days. *Id*. at § 39-14-209(v), (vii). Only section (iv) is applicable to this dispute. Although the Department has issued rejections for various of Vanguard's 2014 amendments, it has yet to make any fair market value findings since the rejections were based on lack of supporting documentation. (*See* ECF No. 17-3).[7] In other words, the Department has not yet issued a final administrative decision that is appealable to the Board.

Vanguard alleges it received correspondence from the Department "indicating [] it had 30 days from the date of the rejection to appeal the rejections to the [Board]." (ECF No. 27-1 at 3). The correspondence Vanguard cites to appears to be an e-mail from the Department responding to questions posed by Vanguard. (ECF No. 27-1 at 9). Vanguard highlights the second part of the e-mail, which explains the procedures and lists the addresses to which an appeal may be filed "within thirty (30) days of the date of the final administrative decision at issue." (ECF No. 27-1 at 9). Notably, however, the first part of the e-mail lays out the "standard lists of documents requested during a review" by the Department. (ECF No. 27-1 at 9). Given that Vanguard's amended returns were still under review by the Department, it cannot be said that the Department had issued a final decision appealable to the Board.

---

[7] Notably, in the Department's Severance Tax Rejection Notices, it indicated that "[r]ejected filings have a status of "Not Filed" and may be subject to penalty." (ECF No. 17-3 at 324, 652, 687). Labeling Vanguard's rejections as not filed, indicates that these are not final judgments on the part of the Department that would trigger a 30-day appeal to the Board.

The Supreme Court of Wyoming addressed the issue of what constitutes a "final administrative decision" in *Merit Energy Co. v. Dep't of Rev.*, 2013 WY 142, 313 P.3d 1257 (Wyo. 2013).  In *Merit*, an in-kind interest owner,[8] attempting to file an appeal, argued that the Department of Revenue had not yet issued a final administrative decision, such that he was precluded from appealing by virtue of the 30-day appeal period.  *Id.*, ¶ 19, 313 P.3d at 1261.  The Department took the contrary position, arguing that the letters sent to Merit, the in-kind interest owner, were final administrative decisions, precluding review from the Board.  *Id.*, ¶ 21, 313 P.3d at 1261.  Although the type of property interest owner is different from the one before the Court, *Merit* is persuasive authority, nonetheless.

In holding that the letters sent to Merit were final administrative decisions by the Department, the court in *Merit* first noted the language used in the letters the Department sent.  *Id.*, ¶ 22, 313 P.3d at 1261.  Specifically, the court found that the letters from the Department "explicitly identified the final assessment of the taxable value on which Merit's severance and ad valorem taxes would be based, and the letters stated specifically that they were 'final administrative decision[s].'"  *Id.*, ¶ 24, 313 P.3d at 1261.  Second, the court in *Merit* indicated that a final administrative decision is one that "end[s] the proceedings leaving nothing further to be accomplished.'"  *Id.*, ¶ 17, 18, 313 P.3d at 1260–61 (*quoting Bd. of County Comm'rs v. Exxon Mobil Corp.*, 2002 WY 151, ¶ 35, 55 P.3d 714, 723 (Wyo. 2002)).  To that point, Merit argued that the proceedings had not ended, meaning there was no final administrative decision, because there existed a possibility of future assessments, audits, and amended returns, none of which had yet been instituted.  *Id.*, ¶ 20, 313 P.3d at 1261.  The court, however, ruled that in the absence of those additional proceeds, the Department's decision was final.  *See id.*, ¶ 25, 313 P.3d at 1262

---

[8] "[A] party who elects to take a portion of the mineral produced rather than receive monetary remuneration for its share of the production."  *Merit Energy*, 2013 WY 142, ¶ 3, 313 P.3d at 1258 (citation omitted).

(noting *Merit* had not filed an amended return, nor had the Department performed an audit); *see also Wyodak Res. Dev. Corp. v. Dep't of Revenue*, 2017 WY 6 ¶ 62, 387 P.3d 735, 739 (Wyo. 2017).  Finally, the court in *Merit* noted that the taxpayer did not have to wait until a NOVC was issued before appealing.  *Id.*, ¶ 26, 313 P.3d at 1262.  It highlighted that "the mineral tax process is one that allows for appeals along the way . . . ." *Id.*, ¶ 25, 313 P.3d at 1262.

In light of the Wyoming Supreme Court's holding in *Merit*, this Court finds that the Department has not issued a final administrative decision, such that Vanguard is precluded from appealing to the Board.  Here, unlike in *Merit*, the rejection notices that Vanguard cites for finality, state that the "[r]ejected filings have a status of 'Not Filed' and may be subject to penalty."  (ECF No. 1-3 at 324).  Contrary to the facts in *Merit*, the letters from the Department do not explicitly state that they constitute a "final administrative decision."  *Id.*, ¶ 24, 313 P.3d at 1261.  Correspondence from the Department, although detailing the procedures and timeframe for appeal, cannot be said to constitute a final administrative decision; rather, they highlight that the Department is still reviewing Vanguard's amended returns.  (ECF No. 27-1 at 9 (providing the "standard list of documents requested during a review")).  Unlike in *Merit*, Vanguard has filed amendments and the Department has initiated an audit; thus, the Department's decision cannot be said to be final.  *See id.*, ¶ 25, 313 P.3d at 1262; *see also Wyodak*, ¶ 62, 387 P.3d at 739 (finding the Department's decision was not final where the "categorization of [] costs could change based upon the audit result").  Finally, it is important to note that Vanguard could have appealed to the Board rather than commence this adversary proceeding.  *See Merit*, ¶ 26, 313 P.3d at 1262 ("[T]his Court did not suggest that a ***taxpayer*** may, or should, wait until a NOVC [a Notice of Valuation Change] is issued before appealing . . . .").  Conversely, it was also appropriate to initiate this adversary proceeding rather than appeal to the Board.

Accordingly, although Vanguard filed this adversary proceeding rather than initiate an appeal process with the Board in Wyoming, both parties acknowledge that several of Vanguard's rejected amendments were re-filed with the Department and are currently pending, in light of the Department's request for further documentation.  Even those amendments that were not re-filed with the Department are not subject to the 30-day limitation because there has been no separate valuation from the Department, since the rejections were based on lack of documentation and are still under review.  Vanguard has not lost its right to seek a determination as to its 2014 amendments from the Department and the Board given that the Department has not issued a final administrative decision, initiating the 30-day clock.[9]

Given that the limitations built into § 505 are not at issue here, the Court must examine whether abstention is appropriate using the six-factor test.

## II. Whether abstention is appropriate

Even if a court has jurisdiction under § 505, it is not required to exercise it.  *In re Breakwater Shores Partners, L.P,* No. 10-61254, 2012 WL 1155773, at *5 (Bankr. E.D. Tex. Apr. 5, 2012).  It is within the Court's discretion to exercise jurisdiction over a § 505 claim. *Luongo v. Luongo (In re Luongo)*, 259 F.3d 323, 330 (5th Cir. 2001) ("The bankruptcy court's ability to abstain is premised on Congress' use of the word '*may*' in § 505.").  However, a bankruptcy court should exercise its discretionary authority to abstain sparingly.  *In re Altegrity, Inc.*, 544 B.R. 772, 777–78 (Bankr. D. Del. Jan. 14, 2016).

The Fifth Circuit has identified six factors to be considered in determining whether a bankruptcy court should exercise discretion to abstain from making a tax valuation decision:

1. The complexity of the tax issues to be decided;

---

[9] The Department acknowledges that the 30-day appeal period has not began to run, given that no final administrative decision has been made.  (October 22, 2018 Hearing at 9:35-9:42 a.m.).

2.  The need to administer the bankruptcy case in an orderly and efficient manner;

3.  The burden on the bankruptcy court's docket;

4.  The length of time required for trial and decision;

5.  The asset and liability structure of the debtor; and

6.  The prejudice to the taxing authority.

*In re Breakwater Shores,* 2012 WL 1155773, at *5 (citing *Luongo*, 259 F.3d at 330).

Courts have identified a two-fold purpose for §505: (i) affording a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate, and (ii) providing an opportunity for the trustee, on behalf of the creditor, to contest the validity and amount of a tax claim when the debtor has been unwilling or unable to do so." *Luongo*, 259 F.3d at 330 (citations omitted).  However, in *Luongo,* the Fifth Circuit placed § 505 within in the context of the Bankruptcy Code's goals.  *Id*.  "The bankruptcy court's responsibility in administering the estate is not only to achieve a fair and equitable distribution of assets to the creditors, but also to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh."  *Id.* (citations omitted).  Thus, a court should consider the impact of the abstention not only on the general administration of the estate, but also on the debtor.  *Id*; *see also In re Breakwater*, 2012 WL 1155773 at *5 ("The proper focus of this deliberation is the benefit that the exercise of jurisdiction could bring to general unsecured creditors of the bankruptcy estate . . . as well as the impact of an abstention decision upon the debtor and the 'fresh start' objective of the Bankruptcy Code.").

When bankruptcy issues are at the core of a dispute, it would be absurd for a bankruptcy court to abstain from deciding those matters over which it has particular expertise.  *Luongo,* 259

F.3d. at 331.   On the other hand, simply because tax law is somehow implicated does not automatically trigger abstention.   *Id*.   The Fifth Circuit has held that where bankruptcy issues predominate and the Code's objectives will potentially be impaired, bankruptcy courts should generally exercise jurisdiction.   *Id*. at 332.   Conversely, absent any bankruptcy issues or implication of the Code's objectives—such as ensuring the efficient administration and equitable distribution of the estate for the benefit of creditors and protecting the debtor's right to a fresh start—it is usually appropriate for the bankruptcy court to decline or relinquish jurisdiction.   *Id*.

### a.  The Complexity of the Tax Issues

The Department argues that the Court should abstain from exercising jurisdiction in this case because transportation deductions are one of the most litigated and complex issues in Wyoming tax law.  (ECF No. 31 at 7).  The Department indicates that the Wyoming Supreme Court in *Exxon Mobil Corp. v. Dep't of Revenue*, 2009 WY 139, 219 P.3d 128 (Wyo. 2009) has given "multiple potential points of valuation" for transportation deductions and the determination would therefore involve "a fact-intensive examination of the configuration and processing of oil and natural gas from Vanguard's wells."  (ECF No. 25 at 8).  Additionally, the Department claims that not only is the determination complex, but it also involves a review of "sales contracts, process agreements, and field schematics"—documents that "Vanguard has yet to provide."  (ECF No. 25 at 9).

Vanguard counters that "its entitlement to tax refunds require[s] nothing more than computation and accounting for revenues and expenses."  (ECF No. 27 at 14).  In other words, all that is required to assess its 2014 tax amendments are mathematical calculations and an application of the Wyoming statute to facts.  (ECF No. 27 at 15).  Additionally, Vanguard alleges that the number of wells and volume of amendment requests does not create a hinderance in this

Court, because "the relevant information can be summarized and presented through summary exhibits and testimony." (ECF No. 27 at 15).

The tax issue before the Court is complex in volume and substance. Determining the dispute in this case would require that the Court undertake a fact-intensive review of the production of approximately 1,550 wells and the amount of taxes in question. Courts have generally abstained from hearing § 505 requests when the tax issue is fact intensive. *In re Ryckman Creek Res., LLC*, 570 B.R. 483, 487 (Bankr. D. Del. Apr. 10, 2017).

       i.   *Volume*

By Vanguard's own admission, they submitted, and were denied, "thousands of amendments" regarding production from their wells in 2014. (ECF No. 17 at 5). The amendments were submitted to the Department after Vanguard discovered it had overpaid severance taxes on certain wells in early 2017. (ECF No. 27 at 5). After its discovery, Vanguard manually recalculated the production, prices, and deductions for each of the Wyoming wells in which it owns mineral interests and filed its amended 2014 tax returns in January and February of 2018. (ECF No. 27 at 5). Notably, by Vanguard's own admission, it took approximately a year to recalculate its 2014 tax liability. (ECF No. 17 at 5).

Furthermore, although Vanguard previously indicated that the parties had mutually agreed to simplify and expedite the determination of its 2014 amendments—and the Department expressed willingness to reduce the amount of documents needed to make the determination of Vanguard's amendments—neither party arrived at an acceptable mechanism to accomplish this. (October 22, 2018 Hearing at 10:01 a.m.).

Accordingly, litigating an assessment of Vanguard's 2014 tax amendments will involve a substantial volume of documents, a significant amount of time, and huge complexity. (ECF No.

17 at 5 (alleging the Department had denied "thousands of amendments" Vanguard submitted in January of 2018)).  It is worth noting that Vanguard acknowledges that its own accounting staff did not take several available deductions when it incorrectly filed hundreds of Wyoming returns.

>ii.     *Complexity*

Vanguard insists that in assessing its 2014 amended tax returns, the Court merely will engage in "some arithmetic and . . . statutory construction analysis."  (ECF No. 27 at 15).  Its own requests indicate otherwise.  In its complaint, Vanguard notes that ad valorem tax and severance tax on the same oil and natural gas production must be taxed on the same values for that production.  "Therefore, the taxable value, the volume of production, and the amount of allowable deductions on that production must match on the severance tax return and gross products return."  (ECF No. 17 at 7).  Vanguard seeks a determination of the appropriateness of its 2014 tax amendments, its conformity to Wyoming law, and an assessment of production and value.  Each of these determinations is a matter of state law, which is best decided through local adjudicative bodies.  *Ryckman,* 570 B.R. at 487.

Given the volume and complexity of the issue presented, this factor favors abstention from jurisdiction pursuant to 11 U.S.C. § 505.

>**b.  The Need to Administer the Case in an Orderly and Efficient Manner**

Vanguard argues that abstention would force litigation across "multiple forums in different states . . . ."  (ECF No. 27 at 16).  Vanguard maintains that given the Court's jurisdiction and authority, trial efficiency weighs against abstention because its claims are interrelated; should be adjudicated together; and all witnesses, documents and records are located in Houston.  (ECF No. 27 at 16).  Abstention would cause unnecessary expense in travel and would "make it virtually impossible to reach a global settlement."  (ECF No. 27 at 9).

Furthermore, in light of *Vanguard II*, declining to abstain is essential to furthering the Bankruptcy Code's objectives.  (ECF No. 43 at 2).

The Department counters that since Vanguard's bankruptcy case has entered the post-confirmation phase, little remains regarding estate administration other than this tax liability determination.  (ECF No. 25 at 9).  Thus, abstention would not affect the orderly and efficient administration of the bankruptcy case.  (ECF No. 25 at 9).  The Department treats *Vanguard II* as a separate action that does not affect the current adversary proceeding.  (ECF No. 44 at 4). Importantly, the Department notes that, contrary to Vanguard's assertion that its claims are interrelated, Counts I, II, and IV, are separate from Counts III, and V–VIII.  The Department takes the position that the allowance and preference matters are unrelated to Vanguard's 2014 severance and ad valorem tax liability.[10]  (October 22, 2018 Hearing at 9:45 a.m.; ECF No. 31 at 8 ("The remaining claims concern avoiding allegedly preferential tax payments made in 2017 and disallowing a 2012 claim.")).  As such, there is no efficiency to be gained from litigating the claims together, because they are different—the 2014 tax amendments do not touch and concern the estate like Vanguard's disallowance and preference claims.  (October 22, 2018 Hearing at 9:50 a.m.).

Generally, there is no need to expeditiously resolve a tax dispute to ensure an efficient and orderly administration of a case, where the plan has been confirmed, the tax claim has been provided for in the plan, and the plan has gone effective.  *Altegrity*, 544 B.R. at 781 ("Unlike a situation where a tax claim would impact a debtor's plan of reorganization, the circumstances before this Court represent merely a debtor's desire to obtain certainty on a tax obligation."); *see also Ryckman*, 570 B.R. at 483 ("These issues do not affect the Court's need to administer the

---

[10] At the hearing on the Department's Motion to Abstain, Vanguard conceded that the 2014 amendment issue differs from its preference and disallowance actions.  (October 22, 2018 Hearing at 9:52 a.m.).

bankruptcy case in an orderly and efficient manner because . . . determination of the debtor's tax liability is not a condition to confirmation of the Plan."). However, at least one court declined to abstain where a bankruptcy case remained at a "relatively early stage." *In re Indianapolis Downs, LLC*, 462 B.R. 104, 115 (Bankr. D. Del. 2011). The court in *Indianapolis Downs*, found "compelling the Debtor's argument that a ruling on the Tax Motion—regardless of the outcome—w[ould] materially aid the Debtor in structuring its plan of reorganization, which in turn w[ould] likely impact the entire creditor body." *Id*. In light of its second bankruptcy filing, Vanguard is now a debtor that is in its early stages of bankruptcy.

The Court rejects the Department's contention that the filing of the second bankruptcy case should not influence the abstention decision. The Court should look at the true relationship between an adversary proceeding and a bankruptcy case, not the artificial relationship established by a computer designed for administrative efficiency. There is no reasonable dispute that the resolution of this adversary proceeding is material to the new Vanguard bankruptcy proceeding.

The Fifth Circuit has held that "absent any bankruptcy issues or implication of the Code's objectives—such as ensuring the efficient administration and equitable distribution of the estate for the benefit of creditors and protecting the debtor's right to a fresh start—it is usually appropriate for the bankruptcy court to decline to relinquish jurisdiction." *Luongo*, 259 F.3d at 332. Taking Vanguard's complaint as a whole, it is clear that bankruptcy issues predominate. (*See* ECF No. 1). However, the Department noted—and Vanguard conceded—that the allowance and preference claims laid out in Counts II, V-VII are unrelated to Vanguard's 2014 severance and ad valorem tax liability set out in Counts I, II, and IV, which are at issue in this adversary proceeding. (October 22, 2018 Hearing at 9:45 a.m.; ECF No. 31 at 8 (discussing the

remaining claims, concerning "avoiding allegedly preferential tax payments made in 2017 and disallowing a 2012 claim")).  Resolution of Counts I, II, and IV involves non-bankruptcy issues. However, despite the absence of bankruptcy issues, it cannot be said that the Code's objectives are not implicated in Vanguard's tax determination.  Vanguard seeks a $710,120.41 tax refund from the Department, based on alleged miscalculations it made in 2014 as to newly acquired wells. (ECF 17 at 5).  With *Vanguard II* in its initial stages of bankruptcy, it is likely that this tax determination would impact its new plan of reorganization, which would then in turn impact the creditor body.  *Indianapolis Downs*, 462 B.R. at 115; *see also Luongo*, 259 F.3d at 332 (recognizing there will be instances "where exceptional factors involving judicial economy, fairness and convenience to the litigants, or the simplicity of the non-bankruptcy issues" may counsel against abstention).

Accordingly, this factor weighs against abstention.

### c.  The Burden on the Court's Docket

The Department argues that the Board is likely to issue a decision in an expeditious manner due not only to its familiarity with Wyoming mineral tax law, but also its relatively light docket.  (ECF No. 31 at 9).  The Board had 13 pending appeals as of September 2018.  (ECF No. 31 at 9).  Furthermore, the Department stated that once it received the documents requested from Vanguard, it could review and issue a final decision on Vanguard's amended 2014 tax returns in two to three months.  (October 22, 2018 Hearing at 9:38 a.m.).  Vanguard contends that the burden on the Court's docket remains the same regardless of abstention because "abstention does not resolve this case in its entirety as there are other disputes with [the Department] that this Court will need to adjudicate."  (ECF No. 27 at 17).

It is undisputed that the approximately 4,000 cases pending before this Court dwarfs the 13 pending appeals before the Board.  Vanguard's argument that a separate issue with the Department will continue in this Court regardless of abstention as to their tax liability does not diminish the reality that the Court's docket is sizeable in comparison to the Board's.  However, this Court has the capability of making a determination as to Vanguard's 2014 amendments, regardless of its docket size.  This Court is not overworked and is capable of making a prompt determination.  Accordingly, this factor weighs neither in favor nor against abstention.

### d.  The Length of Time Required for Trial and Decision

Vanguard argues that the length of trial needed to adjudicate this matter is one day.  (ECF No. 27 at 17).  Furthermore, it indicates that "the parties have agreed to a joint discovery/case management plan in which the parties have discussed, among other things, sampling relevant documents and conducting depositions by video conference to minimize delay and cost of discovery."  (ECF No. 27 at 17).  Vanguard maintains that this Court will provide a stream-lined schedule for discovery and trial, as opposed to the method followed by the Board, which requires Vanguard to "produce, 'among other things, sales contracts, processing agreements, and field schematics.'"  (ECF No. 27 at 3).

The Department counters that abstention will not cause significant delay.  (*See* ECF No. 25 at 10–11).  When questioned by the Court as to a specific time frame for a decision on Vanguard's 2014 tax returns, the Department indicated that once it received all required documentation, it could issue a final decision within two to three months.  (October 22, 2018 Hearing at 9:39 a.m.).  It further underscored that once the Department issued its final decision, Vanguard also has the option to pursue an expedited appeal under the Board's procedures.  (ECF No. 25 at 11).

Although the parties agreed in principle to reduce the amount of documents needed to adjudicate Vanguard's 2014 tax amendments by only testing mineral groups rather than wells, neither could articulate a practical procedure to achieve this result.  (October 22, 2018 Hearing at 9:53 a.m. (expressing disagreement over the number of wells and/or mineral groups to be tested and the amount and substance of the documents required of each well)).   Although the presentation of evidence may be reduced through abstention, it is not likely that litigating in this Court will substantially shorten the timeframe for trial and decision, given the parties disagreement as to procedure.  The efforts in either forum will be similar.

Accordingly, this factor is neutral.

### e.   The Asset and Liability Structure of the Debtor

On February 1, 2017, Vanguard Natural Resources, LLC and its subsidiaries, including Vanguard Operating, LLC, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  (Case No. 17-30560, ECF No. 1).  On July 18, 2017, Vanguard's plan of reorganization was confirmed, and it became effective on August 1, 2017.  (Case No. 17-30560, ECF No. 1109).  Pursuant to the Plan all assets were vested in the Reorganized Debtor[11]:

> Except as otherwise provided in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances.

(Case No. 17-30560, ECF No. 1109-1 at 54).

On March 31, 2019, Vanguard Natural Resources, Inc., including Vanguard Operating, LLC, commenced a second chapter 11 case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (Case No. 19-31786, ECF No. 1).  Vanguard argues that this

---

[11] "'*Reorganized Debtors*' means, collectively, and each in its capacity as such, the Debtors, as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date, and from and after the Effective Date shall include (without limitation) Reorganized VNR and Reorganized VNR Finance."  (ECF No. 1109-1 at 25).

second bankruptcy filing "means that the confirmed plan from the original bankruptcy case is no longer operative." (ECF No. 43 at 2). The Department takes the contrary position. It claims that *Vanguard I* and *Vanguard II* should be treated as two separate actions, unless Vanguard withdraws, modifies, or alters its amended complaint in *Vanguard I.* (ECF No. 44 at 4).

The confirmed Plan has not become inoperative as a consequence of Vanguard's second filing. Rather, by virtue of the Plan, all assets vested in the Reorganized Debtors and are a part of Vanguard's second filing. (ECF No. 1109-1 at 54). As mentioned above, *Vanguard II* now remains at a relatively early stage. In light of Vanguard's current status in *Vanguard II*, a determination of its tax amendments and potential refunds may materially affect the structure of a future plan of reorganization.

Accordingly, this factor weighs in favor of exercising jurisdiction. *Indianapolis Downs*, 462 B.R. at 115.

### f.   The Prejudice to the Taxing Authority/the Debtor

The most compelling consideration is the potential for prejudice—not to the taxing authority, but to the estate. *In re Breakwater Shores*, 2012 WL 1155773 at *5. *But see In re Luongo*, 259 F.3d at 330 ("[A] court should consider the impact of the abstention not only on the general administration of the estate, but also on the debtor.").

Vanguard argues that this Court's abstention exposes it to additional defenses from the Department and "exponentially increases the cost and burden of bringing this adversary proceeding to an end." (ECF No. 27 at 18). Vanguard claims that the "possibility of losing its ability to collect the tax refunds standing alone demonstrates sufficient prejudice to Vanguard to deny the Department's abstention request." Furthermore, it highlights that abstention will cause it to litigate in multiple forums. (ECF No. 27 at 16).

The Department counters that "uniformity of severance and ad valorem taxation is of paramount importance to the Department." (ECF No. 25 at 8). The Department further notes that Vanguard will not be burdened because depositions and proceedings generally can be conducted via telephone. (ECF No. 31 at 5). Therefore, litigating in Wyoming would add little to no extra cost. (ECF No. 31 at 6).

Vanguard has not demonstrated that adjudicating its 2014 amendments before this Court will substantially reduce the amount of documents that will be needed for a tax determination. Additionally, the Department's willingness to allow remote participation in depositions and proceedings via telephone imposes "little to no extra cost" upon Vanguard. (ECF No. 31 at 6). Accordingly, "there is nothing to suggest that this Court would provide a more optimal outcome for the debtors." *In re Ryckman*, 570 B.R. at 489. This factor is neutral.

### III. The Bankruptcy Code's Objectives

Neither party contests that this Court has the authority to determine Vanguard's 2014 tax liability under § 505. The issue is whether the Court should abstain from exercising jurisdiction over Vanguard's claims. *See* § 505(a). Although the types of issues presented in Counts I, II, and IV are predominantly non-bankruptcy issues, their determination heavily implicates the Codes' objectives. *Luongo*, 259 F.3d at 330 ("The bankruptcy court's responsibility in administering the estate is not only to achieve a fair and equitable distribution of assets to the creditors, but also to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh."). Vanguard is now in the early stages of its second bankruptcy. In light of Vanguard's second filing, the Court, in line with Code's objectives, must ensure the efficient administration and equitable distribution of the estate for the benefit of creditors, while protecting Vanguard's right to a fresh start. *Luongo*, 259 F.3d. at 332; *see also In re Breakwater*,

2012 WL 1155773 at *5 ("The proper focus of this deliberation is the benefit that the exercise of jurisdiction could bring to general unsecured creditors of the bankruptcy estate . . . as well as the impact of an abstention decision upon the debtor and the 'fresh start' objective of the Bankruptcy Code.").

The Department of Wyoming's Motion to Abstain is denied.

<b>Conclusion</b>

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED <u>**May 14, 2019.**</u>

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE